UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KELLY SCOTT,

        Plaintiff,

v.                                        Civil Case No. 13-13287
                                            Honorable Linda V. Parker

STATE FARM FIRE & CASUALTY
COMPANY and KEVIN SAULTER,

        Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANT STATE FARM FIRE &
CASUALTY COMPANY'S MOTION FOR SUMMARY JUDGMENT**

        This declaratory judgment action arises from a boating accident, in which

Plaintiff Kelly Scott ("Scott") was injured. At the time, Scott was riding a tube

towed by a boat owned and operated by Defendant Kevin Saulter ("Saulter"). The

accident occurred when the tube collided with a boat hoist.  In her Complaint,

Scott alleges that Defendant State Farm Fire & Casualty Company ("State Farm")

issued a Homeowners Policy and Boatowners Policy to Saulter, one or both of

which provide coverage for the subject accident: State Farm Insurance

Homeowners Policy No. 22-BJ-J-802-6 ("Homeowners Policy") and State Farm

Insurance Boatowners Policy No. 22-B-H-J-647-2 ("Boatowners Policy").  Scott

seeks a declaration as to State Farm's duty to provide coverage and indemnify

Saulter in an underlying action Scott has filed against Saulter in the Circuit Court for Oakland County, Michigan.

Presently before the Court is State Farm's motion for summary judgment, filed pursuant to Federal Rule of Civil Procedure 56 on September 26, 2014. (ECF No. 29.) In the motion, State Farm asserts that there is no insurance coverage for the accident involving Scott under the plain and unambiguous language of either the Homeowners Policy or Boatowners Policy. Scott filed a response to State Farm's motion on November 12, 2014. (ECF No. 32.) Saulter filed a pleading on November 13, 2014, in which he states that he concurs in Scott's response except to the extent that she alleges Saulter was negligent in the water tubing accident. (ECF No. 33.) State Farm filed a reply to Scott's response brief on November 26, 2014. (ECF No. 35.) The Court concludes that oral argument will not aid in its disposition of State Farm's motion and therefore has dispensed with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f). For the reasons that follow, the Court now grants State Farm's motion.

## I.    Summary Judgment Standard

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient

2

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact."  *Id*. at 323. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial."  *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252.

"A party asserting that a fact cannot be or is genuinely disputed" must designate specifically the materials in the record supporting the assertion, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). The court must accept as true the non-movant's evidence

3

and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*,

477 U.S. at 255.

## II.    Scott's Procedural Objections to State Farm's Motion

As an initial matter, Scott asserts two procedural challenges to State Farm's

summary judgment motion in her response to the motion.  First, Scott contends that

the filing of the motion without first seeking leave of court violates Eastern District

of Michigan Local Rule 7.1(b)(2).  Second, Scott argues that the motion is

premature because discovery has not been completed.

Local Rule 7.1(b)(2) provides that "[a] party must obtain leave of court to

file more than one motion for summary judgment. For example, a challenge to

several counts of a complaint generally must be in a single motion."  E.D. Mich.

LR 7.1(b)(2).  On January 31, 2014, State Farm filed a motion for summary

judgment arguing that Michigan law bars Scott's action against it.  Specifically,

State Farm contended that Michigan Compiled Laws Section 500.3030

bars this "direct action" by an injured third-party against the insurer of the alleged

tortfeasor.  State Farm had filed the motion at the direction of the Honorable Mark

A. Goldsmith, who initially was assigned this lawsuit.[1]  This Court subsequently

denied the motion.

---

[1] The action was reassigned to the undersigned pursuant to Administrative Order
14-AO-030 on May 28, 2014.

4

The Court believes that Judge Goldsmith's order to file the initial summary judgment motion constituted permission for State Farm to file more than one summary judgment motion.[2]  In any event, to the extent there is any dispute with respect to this issue, the Court is granting nunc pro tunc State Farm's request in its reply brief for leave to file the pending summary judgment motion.  (*See* State Farm's Reply at Pg ID 485 n.4, ECF No. 35.)

With respect to Scott's contention that State Farm's motion is premature because discovery is not complete, there is no rule stating that a summary judgment motion may not be filed until all discovery has been conducted.  In fact, the Federal Rules of Civil Procedure provide that "[u]nless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment *at any time* until 30 days after the close of all discovery."  Fed. R. Civ. P. 56(b) (emphasis added).  Rule 56 also sets forth the proper procedure for a non-movant to follow when it believes that the filing of a summary judgment motion before the close of discovery inhibits its ability to respond to the motion.  *See* Fed. R. Civ. P. 56(d).  Notably, Scott does not contend that she cannot present facts essential to justify her opposition to State Farm's motion.  In any event, she has not

---

[2] This Court believes that the previous motion properly could have been filed (and would more appropriately have been characterized) as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  State Farm was instructed, however, to file a summary judgment motion.

followed the procedures of Rule 56(d) for seeking a delay of the Court's
consideration of State Farm's motion.

## III.   Factual and Procedural Background

In a recorded statement taken under oath on August 30, 2011, Saulter
informed State Farm's representative that he purchased the boat involved in the
boating accident, a 1991 SeaRay 170 speedboat ("SeaRay"), from a neighbor on
June 28, 2011.  (Scott's Resp., Ex. A at Pg ID 464, ECF No. 32-1; *See also* State
Farm's Mot., Ex. C, ECF No. 29-6.)  The SeaRay has a 170 horsepower motor.
(Scott's Resp., Ex. A at Pg ID 463, ECF No. 32-1.)  According to Saulter in the
same recorded statement, after taking the boat out on the water for a test run, he
removed it from the water and did not put it back in until July 9 or 10, 2011.  (*Id.* at
Pg ID 464.)

On July 31, 2011, Saulter was operating the SeaRay while pulling Scott and
two other individuals on a three-man tube.  (*Id.* at Pg ID 463, 465; Compl. ¶ 9,
ECF No. 2.)  While executing a turn, the tube struck a boat hoist.  (*Id.*)  Scott
suffered serious injuries as a result of the collision.  (*Id.*)

The Boatowners Policy was in effect at the time of the accident.
(Boatowners Policy Renewal Certificate, ECF No. 15-3 at Pg ID 130.)  The
Declarations describe a 1994 Crest boat and a 1994 Hoosier trailer.  (*Id.*)  The
Boatowners Policy provides coverage for the boat and trailer described in the

6

Declarations, as well as "newly acquired watercraft." (*See id*. §§ I, II.) As defined

by the Boatowners Policy, to be considered "newly acquired watercraft", a boat,

motor or boat trailer

> . . . must be newly acquired by you [i.e., "the named insured" or
> Saulter] and:
>
> c. replace property insured by this policy; or
>
> d. be additional property. On the date of its delivery to you we must
> insure all other boats and motors you own.
>
> You must:
>
> e. tell us about it within 30 days after it is delivered to you;
>
> f. tell us which Boatowners Policy applies; and
>
> g. pay any premium due.

(*Id.*, Definitions ¶ 8.)

Saulter also was insured under the Homeowners Policy at the time of the

accident. (Homeowners Policy Renewal Certificate, ECF No. 29-4 at Pg ID 364.)

As relevant to State Farm's pending motion, the Homeowners Policy provides the

following exclusion for "Coverage L" (i.e., personal liability) and "Coverage M"

(i.e., medical payments):

> e. bodily injury or property damage arising out of the ownership,
> maintenance, use, loading or unloading of:
> . . .
> (3) a watercraft:

(a) owned or rented to any insured if it has inboard or inboard-
outdrive motor power of more than 50 horsepower; . . .

(*Id*. § II(1)(e).)

On September 11, 2011, Scott filed a lawsuit against Saulter and the owner

of the boat hoist, Kurt Doll, in the Circuit Court for Oakland County, Michigan

(the "First Underlying Action").  (State Farm's Mot., Ex. A, ECF No. 29-2.)

Saulter tendered the First Underlying Action to State Farm for defense and

indemnity under the Boatowners Policy, only.  By letter dated November 3, 2011,

State Farm declined coverage for that claim, contending that the SeaRay was not

insured under the policy.  (*Id*., Ex. B, ECF No. 29-3.)  The parties to the First

Underlying Action stipulated to the dismissal of the lawsuit on or about June 14,

2012.

On or about April 29, 2013, Scott filed another underlying action in state

court against Saulter and Doll ("Second Underlying Action").  (*Id*., Ex. D, ECF

No. 29-5.)  In her Complaint, Scott asserts four claims: (I) a negligence claim

against Saulter based on his alleged "careless, dangerous, and reckless" operation

of "the vessel"; (II) a negligent supervision and observation claim against Saulter

based on his alleged breach of "the statutory duty to properly supervise and

observe operation of the water tube"; (III) a negligence claim against Doll based on

his placement of the boat hoist; and (IV) a negligent infliction of emotional distress

8

claim against Saulter and Doll for injuries Scott's son allegedly suffered as a result of observing the accident.  (*Id*.)

On April 29, 2013, Scott also filed the pending declaratory judgment action in state court against State Farm, Saulter, and Doll.  After being served with the Complaint on July 1, 2013, State Farm removed the action to federal court based on diversity jurisdiction.  (ECF No. 1.)  As indicated, in her Complaint, Scott seeks a declaration that the Homeowners Policy and/or Boatowners Policy provide coverage to Saulter for the accident and require State Farm to defend and indemnify Saulter in the Second Underlying Action.  In an opinion and order issued July 7, 2014, denying Scott's motion to remand for lack of subject matter jurisdiction, this Court found that Doll was fraudulently joined as a defendant in this action and sua sponte dismissed him as a party pursuant to Federal Rule of Civil Procedure 21.  (ECF No. 25.)  The Court also concluded that Saulter is properly named as a party but that his interests in this lawsuit are properly aligned with Scott rather than State Farm.  (*Id*.)

## IV.    Applicable Law and Analysis

Michigan law governs this dispute because the Court's jurisdiction is premised upon the diversity of citizenship of the parties.  *See First Credit Union v. CUMIS Ins. Soc'y, Inc.*, 641 F.3d 240, 251-52 (6th Cir. 2011) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)).  Under Michigan law, "an insurance company has

a contractual obligation to defend and indemnify its insured 'with respect to insurance afforded by the policy. If the policy does not apply, there is no duty to defend.' " *Nat'l Union Fire Ins. Co. v. Alticor, Inc.*, Nos. 05-2479, 06-2538, 2007 WL 2733336, at *5 (6th Cir. Sept. 19, 2007) (unpublished) (quoting *Am. Bumper & Mfg. Co. v. Hartford Fire Ins. Co.*, 550 N.W.2d 475, 481 (Mich. 1996)); *see also S. Macomb Disposal Auth. v. American Ins. Co.*, 572 N.W.2d 686, 711 (Mich. Ct. App. 1997) ("[A]ny analysis of an insurer's duty to defend must begin with an examination [of] whether coverage is possible.... If coverage is not possible, then the insurer is not obliged to offer a defense.") (quotation omitted). The duty to defend is broader than the duty to indemnify, *Auto-Owners Ins. Co. v. City of Clare*, 521 N.W.2d 480, 487 (Mich. 1994); therefore, if no duty to defend arises pursuant to the policy's terms, the more limited duty of indemnification cannot be imposed by that policy. *Alticor*, 2007 WL 2733336 at *6.

In Michigan, insurance coverage is a matter of contract between the parties to the insurance policy. *Auto-Owners Ins. Co. v. Churchman*, 489 N.W.2d 431, 433 (Mich. 1992). Thus, in determining coverage issues, courts utilize familiar principles of contract interpretation to discern the intent of the parties. *Farmers Ins. Exch. v. Kurzmann*, 668 N.W.2d 199, 203 (Mich. Ct. App. 2003). The parties' intent is presumed to reside within the contractual language. *Klapp v. United Ins. Grp. Agency, Inc.*, 663 N.W.2d 447, 458 (Mich. 2003). The insurance contract is

10

read as a whole and meaning is given to all of its terms. *Wilkie v. Auto-Owners Ins. Co.*, 664 N.W.2d 776, 781 n. 11 (Mich. 2003). When terms are defined in a policy and those definitions are not ambiguous, the policy's definitions are controlling. *Henderson v. State Farm Fire & Cas. Co.*, 596 N.W.2d 190, 193 (Mich. 1999) (citation omitted). Whether a contract's terms are ambiguous is a question of law for the court to decide. *Whitehouse Condo. Grp., LLC v. Cincinnati*, 569 F. App'x 413, 416 (6th Cir. 2014) (citing *Wilkie*, 664 N.W.2d at 780).

The insured bears the burden of establishing that there is coverage under the terms of the insurance contract; whereas the insurer bears the burden of showing an absence of coverage. *Hunt v. Drielick*, 852 N.W.2d 562, 565 (Mich. 2014) (citing cases). " 'Exclusionary clauses in insurance policies are strictly construed in favor of the insured.' " *Id*. (quoting *Auto-Owners Ins. Co. v. Churchman*, 489 N.W.2d 431, 434 (1992) (brackets added in *Hunt* omitted)). "However," as the Michigan Supreme Court advised in *Hunt*, "it is impossible to hold an insurance company liable for a risk it did not assume, and, thus, clear and specific exclusions must be enforced." 852 N.W.2d at 566 (quotation marks, brackets, and citations omitted).

Thus the question for the Court in deciding State Farm's summary judgment motion is whether, pursuant to the plain and ambiguous terms of the Homeowners Policy or Boatowners Policy, coverage for the subject accident is possible.

11

### A.     The Homeowners Policy

State Farm argues that there is no coverage for the subject accident under the

Homeowners Policy because it excludes from coverage injury "arising out of the ...

use of a watercraft ... if it has inboard or inboard-outdrive motor power of more

than 50 horsepower" and the SeaRay has inboard or inboard-outboard motor power

of 170 horsepower.  Scott contends that this exclusion is inapplicable because the

accident arose from the use of the water tube rather than the SeaRay.  Scott's

argument disregards the Michigan courts' interpretation of the term "arising out

of" the use of covered property and application of that definition.

When discussing the term in the context of an automobile policy, the

Michigan Supreme Court summarized:

> The tort standard of causation is not determinative of causation in an
> insurance case. The insured must show more than the minimal "but
> for" causation. *See Thornton v. Allstate Ins. Co.*, 425 Mich. 643, 650,
> 391 N.W.2d 320 (1986), in which this Court adopted a causation
> standard set forth in *Kangas v. Aetna Casualty & Surety Co.*, 64 Mich.
> App. 1, 17, 235 N.W.2d 42 (1975), that stated:
>
>> While the automobile need not be the proximate cause of
>> the injury, there still must be a causal connection
>> between the injury sustained and the ownership,
>> maintenance or use of the automobile and which causal
>> connection is more than incidental, fortuitous or but for.
>> The injury must be foreseeably identifiable with the
>> normal use, maintenance and ownership of the vehicle.

*Pac. Employers Ins. Co. v. Michigan Mut. Ins. Co.*, 549 N.W.2d 872, 875 (Mich.

1996) (footnote and brackets omitted).  The Sixth Circuit Court of Appeals, also

12

quoting *Kangas*, has instructed further that the term "arising out of" requires a "causal connection" rather than "but for" causation. *Assurance Co. of America v. J.P. Structures, Inc.*, Nos. No. 95-2384, 96-1010, 96-1027, 1997 WL 764498, at *5 (6th Cir. Dec. 3, 1997) (quoting *Kangas*, 235 N.W.2d at 50); *see also Richland Knox Mut. Ins. Co. v. Kallen*, 376 F.2d 360, 364 (6th Cir. 1967) (interpreting term as requiring "causal connection" before *Kanga*).  In *J.P. Structures*, the Sixth Circuit also provided that the term is "ordinarily understood to mean 'originating from' 'having its origin in,' 'growing out of' or 'flowing from' or in short, 'incident to or having a connection with.' " 1997 WL 764498, at *5 (quoting *Red Ball Motor Freight, Inc. v. Employers Mut. Liab. Ins. Co. of Wis.*, 189 F.2d 374, 378 (5th Cir. 1951)); *Kallen*, 376 F.2d at 364.

    In *Pacific Employers*, the Michigan Supreme Court construed language in a school district's automobile insurance policy to determine whether there was coverage for injuries an elementary school student suffered while crossing the street after a school bus driver let the student off at the wrong bus stop. 549 N.W.2d at 873.  The policy provided coverage for bodily injury "caused by accident *arising out of the ownership, maintenance or use, including loading or unloading*, of the owned motor vehicle ...." *Id*. at 874 (emphasis added in decision) (internal quotations and citation omitted). The Michigan Supreme Court concluded that the child's injury " 'arose from' the 'use' of the school bus," reasoning:

"[w]hen this [school bus] driver failed to disembark the child at the correct location, she 'misused' the bus. The injuries that followed were foreseeably identifiable with the negligent decision to disembark the child at the wrong stop." *Id*. at 876.

In reaching this conclusion, the Court rejected the automobile insurer's argument that "it is not subject to liability because it was the school bus driver's 'separate, personal act of discharging [the child] at the wrong stop' and not her 'use' of the school bus that caused the injuries." *Id*. at 877.  The Court held that "[t]his is not a legally recognizable distinction. ... The school bus driver's charge included disembarking the children at predetermined bus stops, not merely transporting them to and from school. The driver 'used' the school bus in doing so, even if one characterizes her conduct as a 'separate and personal' act." *Id*.  The Court further reasoned:

> A foreseeably identifiable injury resulting from the failure to disembark a child from the school bus at the predetermined destination is no more beyond the scope of 'use' under the [automobile] Policy because the separate and personal negligence of the school bus driver was involved than a foreseeably identifiable injury caused by the school bus crossing a double yellow line or going through a red light would be excluded from 'use' under the [automobile] policy because the separate and personal negligence of the school bus driver was involved.

*Id*.

14

The Michigan Court of Appeals' application of similar reasoning in *Smith v. Community Service Insurance Company*, 319 N.W.2d 358 (1982) (per curiam), is particularly instructive in the present case, as the court there held that the plaintiff's injury sustained while riding on an inner tube being towed by the insured vehicle down a snow-covered public rode "arose out of the ownership, maintenance or use of a motor vehicle." *Id*. at 359, 360.  Distinguishing cases finding an insufficient causal connection between the injury and the vehicle, the Michigan Court of Appeals wrote:

> In each of the cases denying . . . benefits based on an insufficient causal connection . . . the injury was inflicted upon the claimant as a result of some independent force (either a person or an instrumentality).  The fact that the injury occurred in or near a motor vehicle was a mere fortuity.
>
> In this case, however, the motor vehicle itself was the instrumentality of the plaintiff's injury.  At the time of the accident, the vehicle was being driven down a public roadway which is a use which is certainly consistent with its inherent nature and in accordance with its intended purpose.  It was being used, therefore, as a motor vehicle would normally be used.  The fact that it may not have been contemplated, as the defendant argues, that the operator of a motor vehicle would pull someone in an inner-tube over a snow-covered road, or the fact that it may have been negligent or even illegal to do so, is no defense to coverage . . .
>
> . . . An injury which directly results from the force of a motor vehicle which is being driven down a roadway in the normal manner is an injury which arises "out of the operation or use of a motor vehicle as a motor vehicle."

*Id.* (ellipsis removed).  While the court found liability for the plaintiff's injury in *Smith*, the court's reasoning results in no coverage under the Homeowners Policy here.

Clearly there is a causal connection between the use of the SeaRay and Scott's injury.  Like the motor vehicle in *Smith*, the watercraft was the instrumentality of [Scott's] injury.  The watercraft was being operated on the water-- a use which is "consistent with its inherent nature and in accordance with its intended purpose."  *See supra*.  The facts present an even stronger case than *Smith* for finding a causal connection because, here, towing an inner tube is a contemplated--  in fact a likely or expected-- foreseeable use of the boat.

The Court therefore concludes that Scott's injury arose out of the use of a watercraft owned by Saulter that has an inboard or inboard-outdrive motor power of more than 50 horsepower.  As such, coverage is excluded under the Homeowners Policy.

### B.    The Boatowners Policy

State Farm contends that there is no coverage for Scott's accident under the Boatowners Policy because it did not cover the SeaRay.  At the time of the accident, the Boatowners Policy provided coverage for "the boats, motors, boat trailers, and boat equipment described in the Declarations" (i.e. a 1994 Crest boat and 1994 Hoosier trailer), as well as "newly acquired watercraft".  (ECF No. 15-3,

16

§ I.)  To qualify as "newly acquired watercraft" under the Boatowners Policy's definitions, the insured *inter alia* "must" have informed State Farm "about it within 30 days after it is delivered to [the insured]."  (*Id*., Definitions ¶ 8(e).)  State Farm argues that the SeaRay is not covered because Saulter purchased it on June 28, 2011, but did not tell State Farm about it until he reported Scott's accident on August 10, 2011.

Scott contends in response that Saulter did not purchase the SeaRay until July 1, 2011, and that there is no evidence as to when Saulter actually took delivery of the SeaRay.  Saulter, however, stated under oath that he purchased the boat from his neighbor on June 28, 2011 and this date also is reflected on the State of Michigan Watercraft Certificate of Title.  (Scott's Resp., Ex. A at Pg ID 464, ECF No. 32-1; State Farm's Mot., Ex. F, ECF No. 29-7.)  Saulter's statement under oath constitutes a binding admission.  *See Friendly Farms v. Reliance Ins. Co.*, 79 F.3d 541, 544 & n.7 (6th Cir. 1996)  (holding that the insured "had affirmatively indicated" by its proof of loss when it discovered the loss and therefore waived issue of whether there was factual dispute as to when loss was discovered); *see also* 17A Couch on Ins. § 254:214 (2014).  While there is no evidence as to whether the SeaRay was physically delivered to Saulter on June 28, 2011[3], the

---

[3] The Boatowners Policy does not define "delivered" or "delivery".  For purposes of deciding State Farm's motion, the Court assumes its means actual physical

17

burden falls on the insured and not the insurer to demonstrate coverage (i.e. that the requirements for coverage are satisfied). *See Hunt, supra*. In any event, the evidence reflects that delivery occurred at least prior to July 9 or 10, when Saulter put the boat in the water, which is more than thirty days before Saulter informed State Farm about the SeaRay.[4]

Under Michigan law, a clear and unambiguous timeliness provision in an insurance policy must be enforced as written. *See DeFrain v. State Farm Mut. Auto. Ins. Co.*, 817 N.W.2d 504 (Mich. 2012). In *Auto-Insurance Company v Winter*, 469 N.W.2d 314 (Mich. Ct. App. 1991), the court held that there was no coverage where the insured failed to comply with the policy language requiring notification of the acquisition of an additional automobile within thirty days. *Id*. at 315. Thus this Court holds that the SeaRay is not covered under the Boatowners Policy as a result of Saulter's failure to notify State Farm of the boat within thirty days of its delivery to him. The Court is not persuaded by Scott's argument that the Michigan Court of Appeals' decision in *Hobby v. Farmers Insurance Exchange*, 537 N.W.2d 229 (1995) (per curiam), mandates a contrary result.

---

possession and control. *See, e.g., State Farm Fire & Cas. Co. v. Powell*, 906 P.2d 198, 200 (Mont. 1995) (defining term).

[4] Nothing in Saulter's statement to State Farm's representative on August 30, 2011 suggests that the SeaRay was not delivered to him on the same date he "purchased" it. In any event, Saulter clearly indicated that the SeaRay was delivered to him before July 9 or 10, but he did not put it in the water right away. (Scott's Resp., Ex. A at Pg ID 464, ECF No. 32-1.)

In *Hobby*, the issue before the court was whether the insured's failure to comply with the thirty-day notice requirement for a replacement vehicle precluded coverage when the insured was involved in an accident with the vehicle during that thirty day period. *Id*. The court found that "[a] plain reading of the [insurance] contract leads to the inescapable conclusion that it creates a grace period to allow the insured to notify [the insurer] of the replacement vehicle." *Id*. at 230. The court held that "this automatic insurance clause extends coverage to the replacement vehicle during the grace period even if the insured does not [timely] notify the insurer of the replacement." *Id*.

First, the accident at issue occurred more than thirty days after the SeaRay was acquired by or delivered to Saulter. Even the *Hobby* court acknowledged that "[o]nce the thirty-day [grace] period expires, of course, coverage is terminated unless timely notice has been provided." 537 N.W.2d at 231. Second, the court in *Hobby* made clear that it was addressing "replacement" as opposed to "newly acquired" vehicles. *Id*. at 230 n.7, 231 (holding that "[i]f an insured has an accident with a *replacement* vehicle on the day after the transfer, but does not notify the insurer of the replacement until the thirtieth day, there can be no doubt that under the policy language involved here, defendant would have to provide coverage. This is a classic description of the operation of a grace period during which insurance is continued in force until it expires by the terms of the contract,

19

i.e., thirty-one days after acquisition of a replacement vehicle unless notice has been given."). This distinction enabled the court to distinguish the case before it from *Winter*.  Here, as in *Winter*, the SeaRay was newly acquired property as opposed to replacement property.

The Court therefore holds that the SeaRay was not covered under the Boatowners Policy at the time of the accident causing Scott's injuries.

**V.      Conclusion**

For the reasons set forth above, the Court finds that State Farm has met its burden of proving that the accident involving Scott falls within an exclusion of the Homeowners Policy.  Neither Scott nor Saulter have demonstrated that an issue of fact exists with respect to coverage under the Boatowners Policy.  Under the plain and unambiguous terms of the Boatowners Policy, and based on the facts presented, there also is no coverage for the accident under that policy.

Accordingly,

**IT IS ORDERED**, that the Motion for Summary Judgment by State Farm Fire & Casualty Company is **GRANTED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: January 22, 2015

20

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, January 22, 2015, by electronic and/or U.S. First Class mail.

s/ Richard Loury
Case Manager